UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE PROTECT DEMOCRACY PROJECT, INC.<br>2020 Pennsylvania Avenue, NW, #163<br>Washington, D.C. 20006<br><br>                Plaintiff,<br><br> v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530<br><br>and<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY<br>245 Murray Drive, SW<br>Washington, D.C. 20528<br><br>                Defendants. | **COMPLAINT**<br><br><br>Case No. 19-3232 |

## INTRODUCTION

1.     Violence and other threats fueled by white supremacy and similar hate-filled ideologies are on the rise in the United States.[1] Indeed, FBI leadership recently acknowledged the threat posed by white supremacist groups and the individuals who share their views, noting: "Individuals adhering to racially motivated violent extremism ideology have been responsible for

---

[1] Elisha Fieldstadt & Ken Dilanian, *White Nationalism-Fueled Violence is on the Rise, But FBI is Slow to Call it Domestic Terrorism*, NBC News (Aug. 5, 2019), https://www.nbcnews.com/news/us-news/white-nationalism-fueled-violence-rise-fbi-slow-call-it-domestic-n1039206.

the most lethal incidents among domestic terrorists in recent years, and the FBI assesses the threat of violence and lethality posed by racially motivated violent extremists will continue."[2]

2. This threat has not arisen in a vacuum. Rather, there is reason to be concerned about the connection between political rhetoric in recent years and the rise in hate incidents we have been experiencing as a nation.

3. Reported hate crimes have been on the rise for several consecutive years, beginning in 2015 (the start of the last presidential election season).[3] And, in the last several years, there have been dozens of cases of violence and other threats in which the alleged perpetrators have invoked President Trump's name or rhetoric, including the mass murder of 22 people in El Paso just this past summer.[4]

4. There are also numerous—and recent—reports of increased activity by white supremacist and other hate groups specifically targeting peaceful protesters at events hosted by

---

[2] Michael C. McGarrity & Calvin A. Shivers, *Confronting White Supremacy*, Statement Before the House Oversight and Reform Committee, Subcommittee on Civil Rights and Civil Liberties (June 4, 2019), https://www.fbi.gov/news/testimony/confronting-white-supremacy.

[3] John Eligon, *Hate Crimes Increase for the Third Consecutive Year, F.B.I. Reports*, New York Times (Nov. 13, 2018), https://www.nytimes.com/2018/11/13/us/hate-crimes-fbi-2017.html.

[4] *See, e.g.,* Mark Levine, *'No Blame?' ABC News Finds 36 Cases Invoking 'Trump' In Connection with Violence, Threats, Alleged Assaults*, ABCNews (Aug. 14, 2019), https://abcnews.go.com/Politics/blame-abc-news-finds-17-cases-invoking-trump/story?id=58912889&cid=social_twitter_abcnp; Jon Swaine & Juweek Adolphe, *Violence in the Name of Trump*, The Guardian (Aug. 28, 2019), https://www.theguardian.com/us-news/ng-interactive/2019/aug/28/in-the-name-of-trump-supporters-attacks-database; Peter Baker & Michael D. Shear, *El Paso Shooting Suspect's Manifesto Echoes Trump's Language*, New York Times (Aug. 4, 2019), https://www.nytimes.com/2019/08/04/us/politics/trump-mass-shootings.html. There are also reports of data showing that counties that hosted Trump Campaign rallies in 2016 saw an increase in hate crimes. *See, e.g.,* Ayal Feinberg, Regina Branton, & Valerie Martinez-Ebers, *Counties that Hosted a 2016 Trump Campaign Rally Saw a 226 Percent Rise in Hate Crimes*, Washington Post (Mar. 22, 2019), https://www.washingtonpost.com/politics/2019/03/22/trumps-rhetoric-does-inspire-more-hate-crimes/?noredirect=on#click=https://t.co/bYXsN60xzH.

President Trump's 2020 reelection campaign throughout the country.[5] These groups often use actual or threatened violence to intimidate individuals exercising their right to protest President Trump or support his opponents. These groups therefore not only endanger public safety throughout the country, they also threaten to quash political dissent—a hallmark of our liberal democracy that needs to be safeguarded.

5. The public has a vital interest in knowing about the nature and extent of the threat posed by white supremacist and other hate groups at Trump Campaign events and what, if anything, the government is doing about it—especially as we enter another election season. There is a special danger to our democracy posed by political violence that is tolerated—or worse—by our chief executive.

6. Accordingly, on August 16, 2019, The Protect Democracy Project, Inc. submitted Freedom of Information Act ("FOIA") requests to the Secret Service and the FBI seeking records related to threats of violence and other unlawful activity by such groups at President Trump's political campaign events, and the government's knowledge and understanding of, and response to, such threats. To date, neither agency has provided a final response.

---

[5] *See, e.g.,* Nic Garcia, *Militia-Style Group, Oath Keepers, Will Be in Dallas for Trump Rally*, The Dallas Morning News (Oct. 11, 2019), https://www.dallasnews.com/news/politics/2019/10/11/militia-style-group-oath-keepers-will-be-in-dallas-for-trump-rally/; Will Sommer & Kelly Weill, *Proud Boys to Beef Up Presence at Trump 2020 Events*, Daily Beast (June 20, 2019), https://www.thedailybeast.com/proud-boys-pledge-to-up-their-presence-at-trumps-2020-events; *see also* Janet Reitman, *U.S. Law Enforcement Failed to See the Threat of White Nationalism. Now They Don't Know How to Stop It.*, New York Times Magazine (Nov. 3, 2018), https://www.nytimes.com/2018/11/03/magazine/FBI-charlottesville-white-nationalism-far-right.html.

7. Protect Democracy brings this action against DHS and DOJ to compel compliance with FOIA, 5 U.S.C. § 552 *et seq.*, and the agencies' implementing regulations, 6 C.F.R. Part 5 (DHS) and 28 C.F.R. Part 16 (DOJ).

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

9. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

10. Defendants have failed to meet the statutory deadlines set by FOIA. *See* 5 U.S.C. §§ 552(a)(6)(A) and (a)(6)(E)(ii)(I). Plaintiff has therefore exhausted all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).

## PARTIES

11. Plaintiff The Protect Democracy Project, Inc. ("Protect Democracy") is an organization with 501(c)(3) tax-exempt status, incorporated under the laws of the District of Columbia, and headquartered at 2020 Pennsylvania Avenue, NW, #163, Washington, D.C. 20006. Protect Democracy is a nonpartisan, nonprofit organization dedicated to fighting attacks, from at home and abroad, on our right to free, fair, and fully informed self-government. Its mission is to protect American democracy from declining into a more authoritarian form of government.

12. As part of its mission, Protect Democracy seeks to inform public understanding of government operations and activities, particularly within the executive branch, by gathering and disseminating information that is likely to contribute significantly to that understanding. Protect Democracy regularly requests such information pursuant to FOIA. Protect Democracy has and will continue to give the public access to documents obtained via FOIA by publishing them on

its website, www.protectdemocracy.org, and sharing information about and analysis of those documents as appropriate.

13. Defendant U.S. Department of Justice ("DOJ") is an agency of the executive branch of the federal government of the United States within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551. DOJ is headquartered at 950 Pennsylvania Avenue, NW, Washington, D.C. 20530. The Federal Bureau of Investigation ("FBI") is a component of DOJ.

14. Defendant U.S. Department of Homeland Security ("DHS") is an agency of the executive branch of the federal government of the United States within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551. DHS is headquartered at 245 Murray Drive, SW, Washington, D.C. 20528. The U.S. Secret Service ("Secret Service") is a component of DHS.

# FACTS

*Plaintiff's FOIA Request*

15. On August 16, 2019, Protect Democracy electronically submitted identical FOIA requests to the FBI and the Secret Service. See Exhibit A. The requests sought:

> (1) Documents concerning explicit or implicit threats of violence made or posed by any white supremacist group or hate group in connection with any event hosted by Donald J. Trump for President (including the president's initial and reelection campaigns, hereinafter collectively referred to as the "Trump Campaign").
>
> (2) Documents indicating that your agency (or any other agency of the federal government) has identified white supremacist groups or hate groups, generally or specifically, as posing a threat of violence or other unlawful activity at events hosted by the Trump Campaign.
>
> (3) Documents indicating that your agency (or any other agency of the federal government) has identified individuals who hold white supremacist or white nationalist views as posing a threat of violence or other unlawful activity at events hosted by the Trump Campaign.

(4) Communications or other documents exchanged with state or local law enforcement agencies concerning explicit or implicit threats of violence made or posed by any white supremacist group or hate group in connection with any event hosted by the Trump Campaign.

(5) Documents concerning the arrest and/or prosecution of any member of any white supremacist group or hate group in connection with violence, harassment, threats, or intimidation at any event hosted by the Trump Campaign.

(6) Documents indicating that any member of any white supremacist group or hate group has been barred or otherwise prevented from attending any event hosted by the Trump Campaign.

(7) Documents indicating or reflecting any advice or instructions given to Trump Campaign personnel concerning the incitement or encouragement of violence at Trump Campaign events.[6]

16. Protect Democracy requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E), 28 C.F.R. § 16.5(e) (DOJ), and 6 C.F.R. § 5.5(e) (DHS).

17. Protect Democracy qualifies for expedited processing based on the "urgency to inform the public about an actual or alleged federal government activity" and because the requests are "made by a person who is primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v). The records that Protect Democracy requested are urgently needed to inform the public about its safety in an arena of political speech vital to our democracy.

18. Protect Democracy also sought fee waivers pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)-(iii).

19. Protect Democracy qualifies for fee waivers based on its status as a representative of the news media and because disclosure of the information sought "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(ii)-(iii).

---

[6] The requests defined key terms, including "white supremacist group" and "hate group."

*FBI Response to Plaintiff's Request*

20.     Protect Democracy submitted its request to the FBI through the agency's online FOIA filing system, the eFOIPA Portal, and received an automated email confirmation from the FBI shortly thereafter.  See Exhibit B.

21.     On the same day, Protect Democracy also emailed the FBI's FOIA office to confirm receipt of the request.  On August 19, 2019, the FBI replied by email confirming that the request was submitted successfully.  See Exhibit C.

22.     Protect Democracy has not received any further communication of any kind from the FBI.  The agency has not responded to Protect Democracy's requests for a fee waiver and expedited processing.  Nor has it provided Protect Democracy with a final response.  In fact, it is unclear whether the FBI has even assigned a file number to the request.

23.     The FBI has no lawful basis for failing to timely produce responsive records or otherwise respond to Protect Democracy's request.

*Secret Service Response to Plaintiff's Request*

24.     Protect Democracy submitted its request to the Secret Service via email to FOIA@usss.dhs.gov.

25.     In a letter dated August 19, 2019, the Secret Service acknowledged that it had received the request on August 16 and assigned it "File No. 20191045."  See Exhibit D.

26.     In the same acknowledgment letter, the Secret Service denied Protect Democracy's request for expedited processing.  The letter included boilerplate language indicating that the Secret Service determined that the request "did not present any facts to justify a grant of expedited processing under the applicable standards."  As to Protect Democracy's

request for a fee waiver, the Secret Service indicated that it will hold such request "in abeyance pending the quantification of responsive records."

27. In another letter dated September 3, 2019, the Secret Service explained (somewhat confusingly) that "after conducting a search for responsive records," it determined that Protect Democracy's request was "too broad in scope" and that additional detail was necessary to allow the agency to "initiate a search for responsive records." The letter also stated that it was not a denial of Protect Democracy's request and instructed Protect Democracy to resubmit its request containing a reasonable description of the records it was seeking. See Exhibit E.

28. On September 13, 2019, counsel for Protect Democracy spoke by phone with two employees of the Secret Service's FOIA office to obtain more information as to why the agency viewed the request as too broad to process. Counsel was told that the Secret Service database(s) could only be searched using names (including people and places) and dates, but not key terms or subjects; however, emails could be searched using key terms.

29. Although Protect Democracy maintains that its original request was reasonably and sufficiently descriptive, on September 20, 2019, Protect Democracy narrowed its original request. See Exhibit F. Among other things, Protect Democracy narrowed the timeframe covered by its request. Protect Democracy also provided the Secret Service with a non-exhaustive list of previous Trump Campaign events by date and location and a non-exhaustive list of white supremacist and hate groups. Protect Democracy specifically noted in its September 20 letter, however, that the events included only "past events" (as those were the only events it could reasonably identify without further information from the Secret Service) and the list of groups was only "partial."

30. The narrowed request sought:

(1) Email communications, agency memoranda, or other documents (including campaign event itineraries, schedules, or agendas) identifying threats of violence made or posed by any known white supremacist group or hate group in connection with any event hosted by Donald J. Trump for President (including the president's initial and reelection campaigns, hereinafter collectively referred to as the "Trump Campaign"). *[A list of past events by date and location is attached hereto. A partial list of relevant groups is included below.]*

(2) Email communications, agency memoranda, or other documents indicating that any member of any known white supremacist group or hate group has been barred from attending any event hosted by the Trump Campaign. *[A list of past events by date and location is attached hereto. A partial list of relevant groups is included below.]*

(3) Email communications, agency memoranda, or other documents indicating that any member of any known white supremacist group or hate group has been vetted by the agency for attendance at any event hosted by the Trump Campaign. *[A list of past events by date and location is attached hereto. A partial list of relevant groups is included below.]*

(4) Email communications, agency memoranda, or other documents indicating or reflecting any advice or instructions given to Trump Campaign personnel concerning the incitement or encouragement of violence at Trump Campaign events.

(5) Email communications, agency memoranda, or other documents indicating that your agency (or any other agency of the federal government) has identified white supremacist groups or hate groups, generally or specifically, as posing an ongoing or future threat of violence, unrest, or unlawful activity at events hosted by the Trump Campaign.

(6) Communications or other documents exchanged with state or local law enforcement agencies concerning explicit or implicit threats of violence made or posed by any white supremacist group or hate group in connection with any event hosted by the Trump Campaign. *[A list of past events by date and location is attached hereto. A partial list of relevant groups is included below.]*

(7) Email communications, agency memoranda, or other documents concerning the attendance of Enrique Tarrio, leader of a group called the Proud Boys, at President Trump's speech in Miami, Florida on February 18, 2019.

31. On October 3, 2019, the Secret Service acknowledged receipt of the narrowed request, stating in a letter that "the U.S. Secret Service FOIA Office has conducted a reasonable search for all potentially responsive documents." See Exhibit G. However, the letter suggested

9

that the search was based on modified versions of the document categories included in the narrowed request—versions that are narrower than what Protect Democracy submitted to the Secret Service on September 20.

32.     On October 4, 2019, counsel for Protect Democracy called the Secret Service's FOIA office, which confirmed that the agency's search was inconsistent with the narrowed request. In addition, the Secret Service FOIA office also suggested that searching for records related to "white supremacist" groups would yield too many results, though it had not yet attempted such a search.

33.     On October 4, 2019, counsel for Protect Democracy followed up with an email to the Secret Service FOIA office, informing the agency that it was not complying fully with its obligations under FOIA.  See Exhibit H.  The email identified the inconsistencies between the nature and scope of the Secret Service's search and Protect Democracy's request, and asked the agency to provide a written explanation of its search, including specific search terms used for each of the requests.

34.     The Secret Service has not responded to Protect Democracy's October 4 email and has not provided Protect Democracy with a final response to its request.

35.     The Secret Service has no lawful basis for refusing expedited processing or failing to timely produce responsive records.

**FIRST CLAIM FOR RELIEF**

**Defendants Violated FOIA by Failing to Produce Records Responsive to Plaintiff's Request**

36.     Protect Democracy re-alleges and incorporates by reference all preceding paragraphs.

37. Defendants are subject to FOIA and must therefore release in response to FOIA requests any disclosable records in their possession at the time of the requests and provide a lawful reason for withholding any materials as to which they are claiming an exemption.

38. Defendants have failed to comply with the statutory time for the processing of FOIA requests.

39. Protect Democracy has exhausted all applicable administrative remedies with respect to Defendants' failure to timely comply with its requests.

40. Defendants have no lawful basis for declining, or otherwise failing, to expeditiously produce the records requested. Defendants' failure to timely respond to Protect Democracy's requests therefore violated the its rights under FOIA, 5 U.S.C. § 552(a)(6)(A), and Defendants' implementing regulations.

41. Accordingly, Protect Democracy is entitled to an order compelling Defendants to release, as soon as practicable, any responsive documents.

## SECOND CLAIM FOR RELIEF

### Defendant DHS Improperly Denied Plaintiff's Request for Expedited Processing

42. Protect Democracy re-alleges and incorporates by reference all preceding paragraphs.

43. Protect Democracy is entitled to expedited processing of its FOIA request because there is "[a]n urgency to inform the public about an actual or alleged federal government activity" and the request is "made by a person who is primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E); 6 C.F.R. § 5.5(e)(1)(ii).

44. By denying Protect Democracy's request for expedited processing, the Secret Service violated Protect Democracy's rights under FOIA and DHS regulations.

11

## THIRD CLAIM FOR RELIEF

### Defendant DOJ's Failure to Respond Improperly Denied Plaintiff's Request for Expedited Processing

45. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

46. Protect Democracy is entitled to expedited processing of its FOIA request because there is "[a]n urgency to inform the public about an actual or alleged federal government activity" and the request is "made by a person who is primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E); 28 C.F.R. § 16.5(e)(1)(ii).

47. By failing to respond to Protect Democracy's FOIA request at all, including its request for expedited processing, the FBI violated Protect Democracy's rights under FOIA and DOJ regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Protect Democracy prays that this Court:

(1) Declare that the records sought by Protect Democracy in its FOIA requests are public records under 5 U.S.C. § 552(a)(2), which should be disclosed pursuant to 5 U.S.C. §§ 552(a)(3)(A) and (a)(6)(A) and Defendants' implementing regulations, 6 C.F.R. Part 5 (DHS) and 28 C.F.R. Part 16 (DOJ);

(2) Declare that Protect Democracy is entitled to expedited processing by Defendants under 5 U.S.C. § 552(a)(6)(E), C.F.R. § 16.5(e) (DOJ), and 6 C.F.R. § 5.5(e) (DHS);

(3) Declare that Protect Democracy is entitled to fee waivers under 5 U.S.C. § 552(a)(4)(A)(ii)-(iii);

(4) Order Defendants, by a date certain, to produce to Protect Democracy any and all non-exempt records or portions of records responsive to Protect Democracy's

requests, as well as *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

(5) Grant Protect Democracy an award of attorneys' fees and other reasonable litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) Grant Protect Democracy such other relief as the Court deems just and proper.

Dated: October 28, 2019

Respectfully submitted,

THE PROTECT DEMOCRACY PROJECT, INC.

By: /s/ *Justin Florence*
Justin Florence (D.D.C. Bar No. 988953)
Genevieve C. Nadeau[*]
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
justin.florence@protectdemocracy.org
genevieve.nadeau@protectdemocracy.org

Stephanie Llanes[*]
THE PROTECT DEMOCRACY PROJECT, INC.
115 Broadway, 5th Floor
New York, NY 10006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
stephanie.llanes@protectdemocracy.org

*Counsel for Plaintiff*

[*]*Pro hac vice* application forthcoming.